**Hajji A. R. AHMAD**

v.

**John BURKE, Supervisor, Men's Probation Dept., Ernest Holmes, Officer, Men's Probation Dept., Fred W. Jacobs, Chairman, Ms. Verdell Dean, Board Member, Paul J. Descano, Board Member, John H. Jefferson, Board Member, William L. Forbes, Board Member, Pennsylvania Board of Probation and Parole, Commonwealth of Pennsylvania.**

**Civ. A. No. 77–327.**

United States District Court,
E. D. Pennsylvania.

Sept. 12, 1977.

---

**6.** The abuse of the discovery process here is remarkable.

David C. Harrison, Philadelphia, Pa., for plaintiff.

Stanley I. Slipakoff, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

This civil rights action is before me on a motion filed by several of the defendants seeking either dismissal of the complaint or an entry of summary judgment. Fed.R. Civ.P. 12(b), 56. I have concluded that, as to certain defendants, the Eleventh Amendment to the Constitution bars this lawsuit and that, as to the remaining defendants, summary judgment may not properly be entered at this time.

The complaint filed by plaintiff, Hajji A. R. Ahmad, alleges the following facts: Upon his conviction in the Delaware County Court of Common Pleas in January, 1975, Ahmad was placed on special probation for two years. The Pennsylvania Board of Probation and Parole had the overall supervisory responsibility for Ahmad. Ernest Holmes was the Parole Agent assigned to Ahmad's case, and John Burke was the Supervisor of the entire Men's Probation Department. The terms of Ahmad's probation required him to obtain written permission for any travel outside Pennsylvania. On or about January 19, 1976, Ahmad requested of Holmes, and received, a three-day permit authorizing him to travel to Washington, D. C. in order to file an action in the federal district court there. Ahmad made the trip and, upon his return, sought permission "to return to Washington in connection with the prosecution of" the action he had filed. Holmes, and then Burke, denied this request and "stated that no other travel permits would be issued" to Ahmad. Ahmad then filed Civil Action No. 76–256 in this court, naming Holmes and Burke as defendants, in an effort to vindicate his right to travel. He served a copy of the complaint on Holmes and Burke personally on January 28, 1976. At that point, Burke ordered plaintiff to appear the next morning for a hearing on whether his probation should be revoked based on his "failure to pay the fine and costs" imposed at his 1975 sentencing. When Ahmad appeared at Burke's office the next morning, he was arrested by Burke, Holmes, and Probation Officer Blivan, and incarcerated in Delaware County Prison. Ahmad remained in prison for seven days, during which time he was not afforded a hearing. He was then released pending the probation revocation hearing. That hearing was held on March 15, 1976, but was continued in order to obtain testimony from a court clerk regarding the arrangements Ahmad had made for payment of his fine. On March 16, Ahmad paid the fine in full. At the continued hearing on May 3, 1976 "the court found no violation of parole [sic]."

Ahmad filed the complaint in this case on January 27, 1977, the last day of his two-year probation term. Named as defendants are Burke and Holmes, the Commonwealth of Pennsylvania, the Pennsylvania Board of Probation and Parole, and the five individuals who are members of that Board. The complaint charges that Ahmad was denied travel privileges solely because of his race (black) and his religion (Muslim), and that "no similar restrictions are placed on white probationers . . . or probationers not of the Muslim faith." It further charges that Burke and Holmes arrested Ahmad on January 29, 1976, solely in retaliation for the suit Ahmad had filed against them. The complained-of acts are alleged to have been performed maliciously.

Plaintiff relies on 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986, as well as the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution, for his right to relief. He seeks $250,000 in compensatory damages and $500,000 in punitive damages.[1]

The motion presently before me was filed on behalf of the Commonwealth, the Board, and the individual members of the Board. These defendants seek either dismissal of the complaint for want of subject-matter jurisdiction or for failure to state a claim, or entry of summary judgment. Defendants Burke and Holmes are not parties to this motion.

■ The Eleventh Amendment to the Constitution, adopted in 1798, provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

While the Amendment by its terms speaks only to suits brought by citizens of *other* states, the Supreme Court long ago interpreted the Amendment as incorporating the common law doctrine of sovereign immuni-

ty that bars suits against a state by citizens of that state. *Hans v. Louisiana*, 134 U.S. 1, 15–18, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Ever since the decision in *Hans*, the Eleventh Amendment itself has consistently been read to bar such suits. *See, e. g., Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Thus, although Ahmad is a citizen of the Commonwealth of Pennsylvania, the Eleventh Amendment bars this unconsented-to damages action against the Commonwealth, and the complaint will be dismissed as to the Commonwealth for want of subject-matter jurisdiction.

■ The same problem arises with respect to defendant Board. A state agency may fall within the scope of the Eleventh Amendment if it is "an arm of the State," *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), or if it is the state's "alter ego." *E. g., George R. Whitten, Jr., Inc. v. State Univ. Constr. Fund*, 493 F.2d 177, 180 (1st Cir. 1974), quoting *Charles Simkin & Sons, Inc. v. State Univ. Constr. Fund*, 352 F.Supp. 177 (S.D.N.Y. 1973). *See generally* Note, *A Practical View of the Eleventh Amendment—Lower Court Interpretations and the Supreme Court's Reaction*, 61 Geo.L.J. 1473, 1483–89 (1973); 22 Vill.L.Rev. 153, 158–63 (1977). In determining whether a state agency may partake of the state's Eleventh Amendment immunity, the fundamental issue is "whether the governmental entity has powers sufficiently distinct and independent from the state as not to be considered a part of the state." *Flesch v. Eastern Pa. Psychiatric Inst.*, No. 76–3927, 434 F.Supp. 963 at 976 (E.D.Pa.1977); *see Mount Healthy School Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 280, 97 S.Ct. 568. With this background in mind, I turn to a review of the Board's structure and powers.

■ The Board was established in 1965 as "an independent administrative board

---

1. Plaintiff originally sought injunctive relief as well. In his memorandum opposing defendants' motions, however, plaintiff has conced-ed that the request for injunctive relief is now moot since he is no longer on probation or under supervision by any of the defendants.

for the administration of the probation and parole laws of this Commonwealth." Act of December 27, 1965, P.L. 1230, § 2, 61 P.S. § 331.2 (West Supp.1977). Its five members are appointed by the Governor of Pennsylvania. The Board has the exclusive power to grant and revoke parole, 61 P.S. § 331.17 (West Supp.1977), to supervise any person placed on probation, 61 P.S. § 331.17a (West Supp.1977), and "to make general rules for the conduct and supervision" of persons on parole. 61 P.S. § 331.23 (1964). In addition, the chairman of the Board is authorized "to deputize any person to act as an officer and agent of this State" in securing the return of probation or parole violators. 61 P.S. § 331.21b (1964). The Board's powers, in short, are not those of an agency "sufficiently distinct and independent from the state as not to be considered a part of the state." This conclusion is further supported by 61 P.S. § 331.10 (West Supp.1977), which authorizes the Board "to enter into contracts on behalf of the Commonwealth" for office space and equipment for the Board's district offices. Finally, the Board enjoys no financial independence from the Commonwealth. Its budget, like those of all boards and administrative departments, is established pursuant to Article VI of the Administrative Code of 1929, 71 P.S. §§ 221–28 (1964 & West Supp.1977), which gives the Governor the right to amend or disapprove any budget request submitted by any board or department. 71 P.S. § 224 (West Supp.1977).

■ Further evidence of the Board's close relationship to the Commonwealth may be found in the Pennsylvania decisions on sovereign immunity. The Pennsylvania Constitution, art. I, § 11, provides: "Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." In two recent decisions, the Commonwealth Court of Pennsylvania held that suits against the Board were unauthorized suits against the Commonwealth. *Reiff v. City*

*of Philadelphia*, 27 Pa.Cmwlth. 504, 365 A.2d 1357 (1976); *Freach v. Commonwealth*, 23 Pa.Cmwlth. 546, 354 A.2d 908 (1976), *modified* 370 A.2d 1163 (1977) (Sup.Ct. of Pa.). Although the question whether a state agency partakes of the state's Eleventh Amendment immunity is clearly a federal question, state law governs the relationship between the agency and the state, and therefore state law often can inform a court's resolution of the Eleventh Amendment question. *See Lankford v. Platte Iron Works Co.*, 235 U.S. 461, 474, 35 S.Ct. 173, 59 L.Ed. 316 (1915); *cf. Mount Healthy School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Skehan v. Board of Trustees of Bloomsburg State College*, 538 F.2d 53, 62 (3d Cir.) (en banc), *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976).

For the reasons stated above, I conclude that the Board is immune from suit by virtue of the Eleventh Amendment. *Accord, Reiff v. Commonwealth*, 397 F.Supp. 345, 349 n.2 (E.D.Pa.1975) (alternative holding); *cf. Pate v. Alabama Board of Pardons and Paroles*, 409 F.Supp. 478, 479 (M.D.Ala. 1976) (Alabama Board of Pardons and Paroles). The complaint will be dismissed as to defendant Board for lack of subject-matter jurisdiction.

■ As to the individual Board members who are named as defendants, since plaintiff seeks to recover damages, I must determine whether he is proceeding against the Board members in their official capacities or as individuals. *See, e. g., Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 462–64, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Thonen v. Jenkins*, 517 F.2d 3, 6 (4th Cir. 1975); *McCartney v. West Virginia*, 156 F.2d 739 (4th Cir. 1946); *Jones v. Manson*, 393 F.Supp. 1016, 1021 (D.Conn.1975); *Carey v. White*, 375 F.Supp. 1327, 1329 (D.Del. 1974). The Eleventh Amendment bars a damage award against a state official in his official capacity.[2] *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662

---

**2.** An exception to this rule has been recognized in cases where the official has control over funds "wholly separate from the state trea-

sury" and such funds are available to pay a damage judgment. *Dyson v. Lavery*, 417 F.Supp. 103, 109 (E.D.Va.1976).

(1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 462–64, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Condosta v. Vermont Elec. Coop., Inc.*, 400 F.Supp. 358, 361 (D.Vt. 1975); *Hazzard v. Weinberger*, 382 F.Supp. 225, 227 (S.D.N.Y.1974). Where a personal judgment for damages is sought against a state official, however, the Eleventh Amendment is no bar to the suit, *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Sarteschi v. Burlein*, 508 F.2d 110, 113 (3d Cir. 1975); *Fialkowski v. Shapp*, 405 F.Supp. 946, 954 (E.D.Pa.1975), notwithstanding that, as is the case here, the damages sought are substantial. *Downs v. Department of Pub. Welfare*, 368 F.Supp. 454 (E.D.Pa.1973).

■ The complaint does not clearly state whether the Board members are named as defendants in their official capacities or in their personal capacities. The moving defendants initially argued that this ambiguity amounts to a binding election to proceed against the Board members only in their official capacity. Defendants' Motion to Dismiss at 5–6. As defendants conceded at oral argument, however, this contention is foreclosed by *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *Scheuer* was a § 1983 damages action brought against the Governor of Ohio, the Adjutant General, various Ohio National Guard officers, and the president of Kent State University. The district court dismissed the complaint on the alternative grounds that the Eleventh Amendment barred the suit and that the official immunity doctrine precluded recovery against any of the defendants. After an affirmance by a divided panel of the Ninth Circuit, the Supreme Court unanimously reversed. The Court, speaking through Chief Justice Burger, stated:

> "Analyzing the complaints . . . , we see that petitioners allege facts that demonstrate they are seeking to impose individual and personal liability on the *named defendants* for what they claim—but have not yet established by proof—was a deprivation of federal rights by these defendants under color of state law.

Whatever the plaintiffs may or may not be able to establish as to the merits of their allegations, their claims, as stated in the complaint, given the favorable reading required by the Federal Rules of Civil Procedure, are not barred by the Eleventh Amendment." 416 U.S. at 238, 94 S.Ct. at 1687. (Emphasis in original.) *Scheuer* thus "teaches that allegations against state officials should be liberally construed in the plaintiff's favor" where Eleventh Amendment issues are raised. *Flesch v. Eastern Pa. Psychiatric Inst.*, No. 76–3927, 434 F.Supp. 963 at 978 (E.D.Pa. 1977). I will therefore construe Ahmad's complaint to seek personal judgments against the various Board members. Read in this manner, the complaint does not run afoul of the Eleventh Amendment.

■ Plaintiff initially argued that under *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Eleventh Amendment is no bar to this action as against the Commonwealth, the Board, and the Board members in their official capacities. Plaintiff's Memorandum at 2–5. *Fitzpatrick v. Bitzer*, a Title VII case, held only that where Congress, acting pursuant to § 5 of the Fourteenth Amendment, expressly authorized suits against state governments, the Eleventh Amendment would not bar such suits. As plaintiff conceded at oral argument, *Fitzpatrick* turned on explicit language in the 1972 amendments to Title VII that subjected state governments and governmental agencies to liability under that statute. 427 U.S. at 449 n.2, 452, 457, 96 S.Ct. 2666; *see* 42 U.S.C. § 2000e(a) (Supp.V 1975). None of the civil rights statutes involved in this case contain comparable language reflecting a congressional intention to subject state governmental units to liability. Indeed, as the Third Circuit has stated: "In view of the Supreme Court's holding in *Monroe v. Pape*, [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)], that a municipal corporation is not a 'person' subject to suit within the meaning of the [1871] Civil Rights Act, the conclusion that states are not persons within the meaning of the Act is inescapable." *United States ex rel. Gittlemacker v. Coun-*

*ty of Philadelphia*, 413 F.2d 84, 86 n.2 (3d Cir. 1969) (citing cases), *cert. denied*, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970).

■ The individual Board members argue that the complaint should be dismissed, or summary judgment granted, because they were not personally involved in any deprivation of plaintiff's rights and they cannot be held vicariously liable for any wrongful actions of defendants Burke and Holmes. I am required to treat the motion as one for summary judgment since defendant Board members have submitted affidavits in support of their motion to dismiss. Fed.R.Civ.P. 12(b). Rule 56(c) of the Federal Rules of Civil Procedure sets out the standard that must be met before summary judgment will be entered:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The burden of proof rests with the moving party. *E. g., Ettinger v. Johnson*, 556 F.2d 692 at 696 (3d Cir. 1977); *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817, 824 (3d Cir. 1951).

■ The Third Circuit has rejected the application of vicarious liability in § 1983 cases. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976). In an effort to negate their personal involvement in the complained-of actions, de-

fendant Board members have submitted the affidavits of defendants Burke and Holmes, to the effect that the Board took no part in the supervision of Ahmad as a probationer. Plaintiff has submitted no countervailing affidavits, but his memorandum in opposition to defendants' motion "requests that the court refrain from dismissal of the moving defendants until he has had an opportunity to establish direct participation of the Board" through discovery. Plaintiff's Memorandum at 14. Although the moving defendants are technically entitled to summary judgment due to plaintiff's noncompliance with Rules 56(e)[3] and 56(f),[4] out of an abundance of caution I will withhold decision on this motion to insure that plaintiff will have an adequate opportunity to develop his case. Plaintiff will be granted sixty days' time to proceed with discovery aimed at establishing the Board members' direct involvement[5] in this case. Decision on the motion will be deferred until the time granted for discovery has elapsed.

■ The individual Board members also seek dismissal of the complaint against them on the ground of official immunity. In *Thompson v. Burke*, 556 F.2d 231 (3d Cir. 1977), the Third Circuit considered the extent to which members of the Pennsylvania Board of Probation and Parole are shielded by the doctrine of official immunity. The court drew a distinction between adjudicatory and executive duties, and went on to hold that Board members enjoy absolute "quasi-judicial" immunity while performing adjudicatory duties, but that only qualified "good faith" immunity attaches when

---

**3.** Rule 56(e) provides in pertinent part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

**4.** Rule 56(f) provides:

"Should it appear from the affidavits of a party opposing the motion that he cannot *for reasons stated* present by affidavit facts es-

sential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." (Emphasis added.)

**5.** Plaintiff states in his memorandum in opposition that "[f]ailure to supervise by rule is alleged in the complaint against the defendant Board members." Plaintiff's Memorandum at 14. While ¶ 13 of the complaint could perhaps be read to include such an allegation, I will grant plaintiff the requested leave to amend his complaint and set out this allegation more precisely.

Board members perform executive duties. *Id.,* at 236, 237–238. *See generally Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 247–49, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Inasmuch as the immunity issue turns on the characterization of each Board member's responsibilities and activities in connection with plaintiff Ahmad, resolution of that issue must likewise await the development of the factual record in this case. Only when plaintiff has concluded discovery and particularized the individual Board members' involvement in this case will the issue of their immunity *vel non* be ripe for decision.

Defendant Board members have also moved to dismiss plaintiff's § 1985(3) claim for want of sufficient factual allegations to state a cause of action. Defendants' Motion at 8–9. It may be that the complaint falls just short of alleging a conspiracy, which is an element of a § 1985(3) claim. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In any event, I will again withhold decision on the motion pending the completion of discovery proceedings, at which time the § 1985(3) cause of action will face defendants' motion for summary judgment. In addition, plaintiff will be permitted to amend the complaint by adding a § 1985(2) claim, as per his request at oral argument, provided that he does so promptly.

In summary, the action will be dismissed as to the Commonwealth of Pennsylvania, the Board of Probation and Parole, and the Board members in their official capacities. Decision of the motion for dismissal or summary judgment as to defendant Board members in their individual capacities will be deferred for sixty days while plaintiff pursues discovery as to those defendants.