Jones, J.
(dissenting). Because I am persuaded that the Appellate Division correctly disposed of this case, and because I think the analysis of the majority in our court is based on fundamental jurisprudential error and sows the seeds of potential mischief, I am obliged to dissent.
The critical issue is whether the courts in our State should recognize and give effect to the law of the State of Texas which specifically limits any possible suit against the University of Houston. to an action in the Texas courts in Harris County where the university is located or in Travis County where the State government’s offices are located (Texas Education Code, § 111.33).[1] The appellate courts of the State of Texas have held that a statute like section 111.33 is not a procedural venue statute but constitutes a limited legislative consent to actions against a branch of the State in the county or counties specified and only in those counties. (State v Isbell, 127 Tex 399; Hardt v Texas Dept. of Corrections, 530 SW2d 897, 898 [Tex]; Martin v State, 75 SW2d 950, 952 [Tex]; cf. Fylipoy v Gulf Stevedore Corp., 257 F Supp 166, 169, in which the Federal court in Texas held that it had no jurisdiction in an action against a political subdivision of that State.) It is for the State of Texas to classify its own statute.
Whether the courts of New York should give determinative effect to the Texas statute in this instance depends on the proper application of principles of comity; no one asserts that we are not free, should we choose to do so, to ignore the strictures of Texas law. In the application of the doctrine of interstate comity, after ascertaining the applicable law declared by our sister State, we are called upon to examine our own public policy, for "[t]he principle which determines whether we shall give effect to foreign legislation is that of public policy and, where there is a conflict between our public policy and application of comity, our own sense of justice and equity as embodied in our public policy must prevail” (Zeevi & *584 Sons v Grindlays Bank [Uganda], 37 NY2d 220, 228, cert den 423 US 886). Even the existence in our jurisdiction of a statute different from that of the other jurisdiction however "does not require or authorize our courts to ignore foreign law affecting substantive rights where such law merely differs from our own. To render the foreign law unenforceable here as contrary to our public policy under such circumstances, it must additionally violate 'some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.’ (Loucks v. Standard Oil Co., supra [224 NY 99], p. 111; Mertz v. Mertz, supra [271 NY 466].) The acceptance of that doctrine is general. (Howard v. Howard, 200 N. C. 574, 579; Buckeye v. Buckeye, 203 Wis. 248; 38 Cyc. 546-549.)” (Coster v Coster, 289 NY 438, 442-443.)
If however the foreign law does not entail any such violation, and, a fortiori, if it parallels an articulated statutory policy of our own State, even though different in detail, full effect should be given to the law of our sister State (Shannon v Irving Trust Co., 275 NY 95; Cross v United States Trust Co. of N. Y., 131 NY 330, 341). In this instance there is a readily identifiable analogue in New York State — a closely similar forum limitation. We, as does Texas, recognize the principle of sovereign immunity and hold that it extends to units of the State University of New York as a component of State government. (Westgate North v State Univ. of N. Y., 77 Misc 2d 611, affd 47 AD2d 1004; State Univ. of N. Y. v Syracuse Univ., 206 Misc 1003, 1004, affd 285 App Div 59, 61-62; cf. George R. Whitten, Jr., Inc. v State Univ. Constr. Fund, 493 F2d 177, 181-182; Simkin & Sons v State Univ. Constr. Fund, 352 F Supp 177, 179, affd 486 F2d 1393; People v Branham, 53 Misc 2d 346-348.) In our case the detail of our forum restriction incorporated in the waiver of sovereign immunity with respect to the State University is slightly different — i.e., actions against the units of our State University may be maintained only in the Court of Claims — but the concept of a categorical limitation of the court in which claims against the university may be instituted is precisely the same. There is thus applicable the language in King v Sarria (69 NY 24), in which the court, speaking of a foreign statute to which it was about to accord recognition under the principle of comity, said: "It much resembles our own statute * * * and, with some difference in detail, it aims at the same beneficial result, which ours has in view; nor may we say, with our statute before us, *585 that the law is opposed to good morals or abstract justice” (p 31). Inasmuch as our New York conceptually identical policy analogue parallels that of the State of Texas, we should recognize and give effect to the legislatively declared policy of that State. This is precisely what the Appellate Division did.
To hold that the disposition of the claim advanced in this case against the University of Texas is governed by our jurisdictional policy reflected in our long-arm statutes, is inappropriately to jump from one level of policy to another and to mingle and confuse policy categories. Texas, too, has a long-arm jurisdictional statute (Vernon’s Ann Civ Stat, art 2031b). Its policy with respect to the authority of its courts to exercise in personam jurisdiction over corporations engaged in commercial activities within the State of Texas is comparable to ours. There is no question on this record, and having regard for the law of Texas with respect to long-arm jurisdiction, that our courts have jurisdiction over the University of Houston within that context, as the Appellate Division and all the members of our court agree.[2] But the critical question is not whether our courts have long-arm jurisdiction; it is whether, under principles of comity, our courts should exercise that jurisdiction in light of section 111.33 of the Texas Education Code. The strong policy considerations undergirding the jurisdictional stance on which the majority relies should not be confused with or permitted to obscure the strong policy considerations which dictate that, under principles of sovereign immunity, units of State government should not be exposed to claims in all courts which might otherwise have authority constitutionally to entertain suits against such units.
I can only conclude that in confusing constitutional authority to entertain actions with forum restrictions incident to limited waiver of sovereign immunity the majority in our court commits serious jurisprudential error. I am also disturbed over what appear to me to be the adverse practical implications of the position adopted by the majority. In view of the decision in this case, I am obliged to suggest that should one of the units of our State government, whether of our State University or otherwise, engage in activities in the State of *586 Texas (or in any of our sister States for that matter) sufficient to permit the constitutional assertion of in personam jurisdiction, an action could be maintained against such governmental unit in that State, despite our demonstrated legislative intent that any such action shall lie only in the New York Court of Claims. Objections to the exercise of such jurisdiction based on considerations of sovereign immunity could then be properly rejected on the ground that the highest court of our State has rejected precisely such a contention in the present case. I view such a prospect as more than mischievous.
For the reasons stated, I would affirm the order of the Appellate Division.
Chief Judge Cooke and Judges Gabbielli, Fuchsberg and Meyer concur with Judge Wachtler; Judge Jones dissents and votes to affirm in a separate opinion in which Judge Jasen concurs.
Order reversed, with costs, and defendant’s motion to dismiss the complaint denied.

. Section 111.33 provides: "The board [of regents of the university] has the power to sue and be sued in the name of the University of Houston. Venue shall be in either Harris County or Travis County. The university shall be impleaded by service of citation on the president or any of its vice presidents.”

. In this "jurisdictional” sense, all the courts of Texas may be said to have "jurisdiction” over the University of Houston and all the courts of the State of New York may be said to have "jurisdiction” over units of the State University of New York. Both States, however, have imposed restrictions on- the exercise of such "jurisdiction”.